UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID N.T. WATSON,

    Plaintiff,

v.                                                          Case No.: 2:10-cv-00778-36SPC

COMMUNITY EDUCATION CENTERS, INC.,
A Delaware corporation, and
JOHN J. CLANCY, an individual

    Defendants.
_____/

## ORDER

This matter comes before the Court on Defendants John J. Clancy and Community Education Centers' Motion to Dismiss for Improper Venue or, Alternatively, Motion to Transfer Venue (Doc. 11). Plaintiff, David N.T. Watson, filed a response (Doc. 13), to which Defendants replied (Doc. 21). Upon consideration of the motion, response, reply and pertinent portions of the record, the motion to dismiss for improper venue will be granted. This case will be transferred to the United States District Court for the District of New Jersey.

## BACKGROUND

As alleged in the Amended Complaint, Plaintiff David N.T. Watson was employed by Wackenhut Corrections Corporation as a senior executive from 1999 until 2007. Doc. 6 at ¶¶10, 12. Starting in 1999 he and Defendant John Clancy had sporadic conversations regarding Plaintiff's potential employment with Community Education Centers (CEC). *Id.* at ¶¶11, 14, 15. CEC is a Delaware corporation with its principal place of business in New Jersey. Doc. 11, Ex. A. It is in the business of providing reentry treatment and education services for adult correctional populations

throughout the United States.  Doc. 6 at ¶7.  Defendant Clancy is a resident of New Jersey and is the Chairman and Chief Executive Officer of CEC.  Doc. 6 at ¶¶ 6, 8 and Doc. 11, Ex. B.  In 2007, Plaintiff left Wackenhut to join another firm called Radiation Therapy Services, Inc. (RTSI) as Executive Vice-President and Chief Financial Officer. *Id*. at ¶13.

In late spring 2009, while in New Jersey, Clancy contacted Plaintiff in Florida and offered Plaintiff the position of  Senior Vice President and Chief Financial Officer of CEC. Doc. 6 at ¶15 and Doc. 11, Ex. B.   On July 2, 2009, Plaintiff met with Clancy in New Jersey at CEC's office during which time they discussed CEC, Plaintiff's compensation at RTSI, his long term career interests, and future growth opportunities for CEC.  Doc. 13, Ex. 1.  Plaintiff also met with Debra Shannon, General Counsel of CEC, during this trip to New Jersey.  *Id.*   On July 14, 2009, Clancy sent a draft employment agreement via email to Plaintiff in Florida for review and discussion at a meeting on July 16, 2009.  Doc. 13, Ex. 1.  On or about July 16, 2009, Plaintiff and Clancy, who was vacationing in Florida, had a sit-down meeting in Miramar Lakes in Collier County,  Florida to further discuss the position being offered and CEC's finances and prospects.  Doc. 6 at ¶17.  At this meeting, Clancy made promises of high compensation and valuable stock options.  Doc. 13, Ex. 1.  Clancy also stated that CEC's financial outlook was very bright.  *Id.*

After the July 16th meeting, Plaintiff visited New Jersey again and conducted further discussions regarding his employment with CEC.  Doc. 13, Ex. 1.  After continued discussions, Plaintiff left his post at RTSI and joined CEC as a Senior Vice President and CFO.  Doc. 6 at ¶25. On or about September 14, 2009, Plaintiff entered into an employment agreement with CEC.  *Id.* Plaintiff executed the employment agreement while in Florida and Clancy executed the agreement, on behalf of CEC, while in New Jersey.  Doc. 11, Ex. A.  An addendum to the employment

agreement was executed on March 24, 2010, while Plaintiff and Clancy were in New Jersey. Doc. 11, Ex. A. The employment agreement required Plaintiff to perform his job responsibilities out of CEC's principal office in New Jersey. Doc. 11, Ex. A. It also required Plaintiff to move his residence from Florida to New Jersey. *Id.* During Plaintiff's employment with CEC, he commuted to New Jersey to work and resided in an apartment in New Jersey. *Id*.

On December 15, 2010, approximately fifteen months after joining CEC, Plaintiff was terminated. *Id*. at ¶44. The termination took place during a face-to-face meeting with Defendant Clancy at CEC's West Caldwell, New Jersey office. Doc. 11 Ex. B. Plaintiff states that no explanation for his termination was provided. Doc. 6 at ¶¶45, 51.

On December 23, 2010, Plaintiff filed a Complaint seeking damages for wages and benefits owed to him under the employment agreement and for declaratory judgment excusing him from performance of obligations under the agreement (Doc. 1). Subsequently, Plaintiff filed an Amended Complaint (Doc. 6), which asserts six claims: breach of contract, breach of the covenant of good faith and fair dealing, fraudulent inducement, promissory estoppel, violation of New Jersey's wage and hour law, and declaratory judgment. The counts are based on the negotiations and/or the performance of the employment agreement entered between Plaintiff and CEC. Plaintiff alleges that CEC's true financial picture was hidden from him during the employment negotiations, that Defendants grossly misstated the true status of its financial affairs, and failed to disclose that CEC's financial situation was dire. Doc. 6 at ¶26.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(3), Fed. R. Civ. P., a defendant may move to dismiss a claim for improper venue and the plaintiff bears the burden of demonstrating that the venue selected is proper.

*Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F. 2d 843, 845 (11th Cir. 1988). "The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). When an allegation of the complaint is challenged, the court may examine facts outside of the complaint to determine whether venue is proper. *Id.* In examining the record, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.* In diversity cases venue is appropriate where a substantial part of the events or omissions which gave rise to the claim occurred. 28 U.S.C. § 1391(a)(2). In determining venue the court considers the relevant actions or omissions having a "close nexus" to the subject matter of the dispute. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003).

If proper venue is established, a defendant may move to transfer the location of the venue for convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a); *see Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). The party seeking a transfer of venue has the burden to establish that the transfer is warranted. *American Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999). Plaintiff's choice of forum is given substantial weight and can only be overcome when the movant shows that the interests of convenience are "strongly in favor" of the transfer. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 s. Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947); *American Aircraft Sales Int'l, Inc.,* 55 F. Supp. 2d at 1351. However, courts are given broad discretion in matters of transfer to avoid unnecessary inconvenience to parties, their witnesses and the public, and to promote judicial economy. *Tampa Bay Storm v. Arena Football League*, 932 F. Supp. 281, 282 (M.D. Fla. 1996). The Eleventh Circuit has identified factors the Court should apply when considering a §1404 motion to transfer.

These factors include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

## ANALYSIS

### A. Plaintiff Has Failed To Establish Proper Venue Under 28 U.S.C. § 1391(a)(2).

Defendants contend that this court is an improper venue to hear Plaintiff's claims because a substantial part of the events giving rise to the claims did not occur within the Middle District of Florida. The federal venue statute, 28 U.S.C. §1391(a), applicable in diversity actions, provides that venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

For purposes of the venue statue, the analysis focuses on relevant activities of the defendants, not of the plaintiff. *Hemispherx Biopharma, Inc. v. Midsouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009)(quoting *Jenkins Brick Co. v. Bremer*, 321 F. 3d 1366, 1371-72 (11th Cir. 2003)).

Plaintiff relies on §1391(a)(2) as his basis for venue in the Middle District of Florida. Doc. 6 at ¶3. He cites the following events in support of his choice of venue: (1) Plaintiff was

5

fraudulently induced to obtain employment with CEC at an in-person meeting with Clancy, the CEO of CEC, in this District; (2) Defendants made numerous daily telephone calls and submitted emails to the Plaintiff at his home in this District; and (3) a material breach of the employment agreement took place in this District, *i.e.*, Defendants failed to pay Plaintiff $1.2 million due under the employment agreement, which payment was to be made to Plaintiff in this District. Plaintiff also refers to the Defendants' ties and contacts with Florida. *See* Doc. 13, Ex. 2. While Defendants' contacts may be relevant to a personal jurisdiction analysis, they are irrelevant to a venue analysis under §1391(a)(2). *See Jenkins*, 321 F. 3d at 1371-72. The Court will focus on only those actions which were, in and of themselves, wrongful or which had a close nexus to the wrongs claimed by Plaintiff. *Hemispherx*, 669 F. Supp. 2d at 1357.

Accepting the allegations of the Amended Complaint as true and resolving all factual conflicts in favor of Plaintiff, the Plaintiff has not established that venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(a)(2). The relevant facts show that in late spring 2009, Plaintiff was offered employment with CEC. Discussions and negotiations regarding the employment with CEC occurred for several months, culminating in the execution of an employment agreement on September 14, 2009. Plaintiff traveled to New Jersey at least twice to meet with Defendant Clancy at CEC's office and Plaintiff met with Clancy once in the Middle District. At the meeting in the Middle District, Plaintiff and Clancy discussed a draft employment agreement, which had been emailed to Plaintiff two days before the meeting. They also discussed Plaintiff's compensation and company stock options.

Although Plaintiff has filed a multi-count complaint, the nature of the suit is breach of the employment agreement by, *inter alia*, failing to compensate Plaintiff in accordance with the

agreement. Most, if not all, of the six counts relate to the employment agreement and/or Defendants' failure to abide by the terms of the agreement, specifically, to pay wages. The decision to make and issue payment to Plaintiff or to not pay Plaintiff was made in New Jersey. The decision to terminate Plaintiff was made in New Jersey. Here, the locus of the breach was New Jersey. In-person contract negotiations occurred twice in New Jersey and once in Florida. Additionally, telephone negotiations and e-mails to Plaintiff originated in New Jersey. By its express terms, the employment agreement was to be performed in New Jersey. The employment agreement was signed by Plaintiff in Florida and by Clancy in New Jersey. The addendum to the agreement was negotiated and signed by both parties in New Jersey. CEC's representatives performed their job duties and responsibilities for CEC in New Jersey. Plaintiff has not demonstrated that a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Florida. Instead, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of New Jersey. Therefore, venue is improper here. This matter will be transferred to the District of New Jersey.

**B. Defendants Have Demonstrated that New Jersey is the More Convenient Venue**

Alternatively, even if venue can be properly established in the Middle District, Defendants have demonstrated that New Jersey is the more convenient forum. Pursuant to 28 U.S.C. §1404(a), transfer of this case to the District of New Jersey is warranted

*1. This action could have been brought in the District of New Jersey.*

The threshold question is whether this case may have been brought in the desired district of transfer, the District of New Jersey. Based on the record, Defendant CEC's principal place of business is in New Jersey. Defendant Clancy resides in New Jersey. This action could have been

brought in New Jersey based on diversity jurisdiction.

> *2. Convenience of the witnesses supports a transfer to the District of New Jersey.*

The analysis of the convenience of the witnesses is not based on which party produces the greater number of witnesses. Instead, the Court looks to the convenience of the key witnesses. The three CEC employees identified by Plaintiff in the Amended Complaint work and reside in New Jersey. Doc. 11, Ex. A. Maria Carnevale works and resides in New Jersey. Frank English works in New Jersey. All of CEC's employees with knowledge of the facts pertaining to this case work or reside in New Jersey. Doc. 11, Ex. A. Plaintiff has identified his wife, his real estate broker, his two appraisers and a witness from a relocation company. Plaintiff has failed to show how the testimony of these witnesses is material to the primary issues in this case; *i.e.*, whether Defendants fraudulently induced Plaintiff to enter into the employment agreement and whether CEC breached the employment agreement. There is no indication that these witnesses participated in the employment negotiations. Because the key witnesses work or reside in New Jersey, the convenience of the witnesses supports a transfer to New Jersey.

> *3. Ease of access to sources of proof and location of documents results in a neutral outcome.*

Due to the presumption favoring a plaintiff's choice of venue, when analysis of any particular factor results in a "neutral" outcome, that factor does not favor transfer. *Sterling v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007). Defendants contend that their business records and other documentary evidence pertinent to this case are at CEC's principal place of business in New Jersey. Doc. 11, Ex. A. Modern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof and this factor does not provide an independent basis for transfer. *See Trinity Christian Ctr. of Santa Ana, Inc. v.*

*New Frontier Media, Inc.*, 2010 U.S. Dist. LEXIS 138500 at *10 (M.D. Fla. November 3, 2010) ("the significance of this factor is reduced because technological advancements in electronic document imaging and retrieval minimize the burden of document production"). This factor results in a neutral outcome and does not favor transfer.  *See Zurich Am. Ins. Co. v. Renasant Ins. Co.*, 2011 U.S. Dist. LEXIS 17641, at *19 (M.D. Fla. Feb. 23, 2011) (suggesting that neutral factors weigh against transfer because of the presumption favoring a plaintiff's choice of venue).

### 4. *The ability to compel the attendance of witnesses results in a neutral outcome.*

The ability to compel the attendance of witnesses is the same in the Middle District as in the District of New Jersey.  *See* Fed. R. Civ. P. 45.  If this case is tried in New Jersey, the Defendants will be able to compel the attendance of witnesses.  If the case is tried in Florida, Plaintiff will be able to compel the attendance of witnesses.  This factor results in a neutral outcome and does not favor transfer.

### 5. *Convenience of the parties results in a neutral outcome.*

Defendant Clancy works and resides in New Jersey.  Plaintiff resides in the Middle District. Both Defendant Clancy and Plaintiff will be inconvenienced by traveling out of state.  CEC will be inconvenienced by the loss of its key management employees during the time of trial.  All parties will be financially impacted by a trial out of state.  This factor results in a neutral outcome and does not favor transfer.

### 6. *The locus of operative facts favors transfer.*

The locus of operative facts refers to the specific actions or omissions that gave rise to the cause of action. *Sterling*, 519 F.Supp. 2d at 1204–1205.  In *Jenkins* the court determined that venue in Alabama was inappropriate, in part, because the employment contract was executed and

9

performed in Georgia. 321 F.3d at 1372–73. Similarly, in this case, the employment contract was drafted in New Jersey and performance of the contract took place in New Jersey. Doc. 11, Ex. A. Most importantly, the alleged breach took place during a face-to-face meeting in New Jersey when Defendant Clancy informed Plaintiff of the decision to terminate his employment. *Id.*; *see Jenkins*, 321 F.3d at 1371 (suggesting that, in the case of breach of contract, the place where the breach occurred is the most important element in establishing the locus of operative facts because "[o]nly the events which directly give rise to a claim are relevant").

Plaintiff contends that the fraudulent inducement occurred in the Middle District at the meeting on July 16, 2009. The record supports this contention. However, it is equally clear from the record that the July 16th meeting was but one of three in-person meetings between Plaintiff and Defendant Clancy where compensation and other terms of employment were discussed. Indeed, discussion and negotiations regarding Plaintiff's employment with CEC occurred over several months in New Jersey and Florida. The locus of operative facts favors transfer.

*7. The forum's familiarity with governing law favors transfer.*

A district court that routinely applies the laws governing the substantive issues of a particular dispute is most adept at applying those laws. *Zurich*, 2011 U.S. Dist. LEXIS 17641, at *19 (suggesting that a state's laws are more appropriately applied by district courts within that state as opposed to district courts from other states); *Promex, LLC v. Perez Distrib. Fresno, Inc.*, 2010 U.S. Dist. LEXIS 90677, at *33 (S.D. Fla. Sept. 1, 2010) (suggesting that transfer is not appropriate when the court is familiar with the state laws giving rise to the plaintiff's claims). Pursuant to the Employment Agreement: "[t]his agreement shall be governed by the laws of the state of New Jersey, other than the choice of law rules thereof." Doc. 11, Ex. A-1 ¶16. Thus, the subject matter

of this contract-related dispute is governed by laws of the state of New Jersey. Additionally, Plaintiff has alleged two New Jersey specific causes of action in the Amended Complaint. In Count Two, Plaintiff alleges a breach of the covenant of good faith and fair dealing which is implied in every contract under New Jersey law (Doc. 6 at ¶64). In Count Five, Plaintiff alleges a violation of the New Jersey Wage and Hour Law (Doc. 6 at ¶87). Therefore, while the Court is competent to apply foreign law, the most appropriate court to apply New Jersey state law is the District Court of New Jersey.

*8. The interests of efficiency and justice favor transfer.*

Plaintiff has alleged two New Jersey specific causes of action. The locus of operative facts strongly favors transfer to the District Court of New Jersey, as Plaintiff's claims arose out of actions which predominately occurred in New Jersey. Moreover, Defendant CEC has its principal place of business in New Jersey. The parties selected New Jersey's laws to govern the dispute at hand. Plaintiff's counsel has offices in Florida and New Jersey. Accordingly, the Court finds that the Defendants have established that the balance of factors strongly favors transfer of this action to the District Court of New Jersey.

**ACCORDINGLY**, it is hereby **ORDERED** and **ADJUDGED**:

1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11) for improper venue is **GRANTED**. This action shall be transferred to the District of New Jersey for all further proceedings.

2. Alternatively, Defendants' Motion to Transfer to the District of New Jersey is **GRANTED**.

11

3.  The Clerk is directed to transfer this action to the District of New Jersey and close this case.

**DONE AND ORDERED** at Ft. Myers, Florida, on August 11, 2011.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

COPIES TO:

COUNSEL OF RECORD